**ORIGINAL**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 0 8 2004

at *10* o'clock and *30* min. *A* M
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HEALY TIBBITTS BUILDERS, INC., | ) | Civ. No. 02-00146 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING HEMIC'S MOTION |
| | ) | FOR SUMMARY JUDGMENT AGAINST |
| vs. | ) | HTBI'S CLAIMS AND MANNERING'S |
| | ) | CROSS-CLAIMS; DENYING |
| MANNERING CONSTRUCTION CO.; | ) | MANNERING'S MOTION FOR |
| INSURANCE ASSOCIATES, INC.; | ) | PARTIAL SUMMARY JUDGMENT |
| HAWAII EMPLOYERS' MUTUAL | ) | AGAINST HTBI; GRANTING IN |
| INSURANCE CO., INC., | ) | PART AND DENYING IN PART |
| | ) | IAI'S MOTION FOR SUMMARY |
| Defendants. | ) | JUDGMENT ON HTBI'S CLAIMS; |
| | ) | GRANTING IN PART AND DENYING |
| | ) | IN PART IAI'S AND |
| | | CHRISTENSEN'S MOTION FOR |
| | | PARTIAL SUMMARY JUDGMENT ON |
| | | MANNERING'S CROSS-CLAIMS. |

ORDER GRANTING HEMIC'S MOTION FOR SUMMARY JUDGMENT AGAINST HTBI'S
CLAIMS AND MANNERING'S CROSS-CLAIMS; DENYING
MANNERING'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST HTBI;
GRANTING IN PART AND DENYING IN PART IAI'S
MOTION FOR SUMMARY JUDGMENT ON HTBI'S CLAIMS; GRANTING IN PART
AND DENYING IN PART IAI'S AND CHRISTENSEN'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON MANNERING'S CROSS-CLAIMS.

I.      OVERVIEW.

        This case flows from the absence of United States

Longshoremen and Harbor Worker ("USL&H") insurance benefits

covering the death of Finefeuiaki Maumau.  Plaintiff/Counterclaim

Defendant Healy Tibbitts Builders, Inc. ("HTBI"), the general

contractor on the project in which Maumau died, is suing its

subcontractor, Mannering Construction Co. ("Mannering"); the

entity through which Mannering bought insurance, Insurance

Associates, Inc. ("IAI"); and the insurer, Hawaii Employers'

Mutual Insurance Co., Inc. ("HEMIC"). The Complaint alleges
negligent misrepresentation, intentional and fraudulent
misrepresentation, breach of contract, breach of express and
implied warranty, specific performance for indemnification, and
promissory estoppel.

Defendant Mannering filed a Cross-Claim against HEMIC
alleging nonpayment, unjust enrichment, conversion,
misrepresentation, negligence, and breach of contract. Mannering
filed a Cross-Claim with 15 separate counts against IAI and Scott
Christensen, the IAI agent who had procured insurance for
Mannering.

HEMIC and IAI now separately move for summary judgment
on all counts alleged by HTBI. HEMIC also moves for summary
judgment on the Cross-Claim filed by Mannering. Mannering
submitted a counter-motion for partial summary judgment against
HEMIC seeking a determination, as a matter of law, that IAI and
Christensen were HEMIC's agents, acting in the scope of their
agency, with respect to the relevant events. Mannering also
seeks to estop HEMIC from denying that the relevant insurance
policy includes USL&H coverage. HTBI has joined Mannering's
counter-motion for partial summary judgment against HEMIC. IAI
and Christensen move for partial summary judgment on the counts
in Mannering's Cross-Claim alleging misrepresentation, conspiracy
to defraud, unfair or deceptive trade practices, promissory

2

estoppel, and punitive damages.

HEMIC's motion for summary judgment against HTBI is GRANTED. HEMIC's motion for summary judgment on Mannering's Cross-Claim is GRANTED. Mannering's motion for partial summary judgment against HEMIC is DENIED. IAI's motion for summary judgment against HTBI is GRANTED as to HTBI's claim for indemnity and intentional misrepresentation, but DENIED as to all other counts moved on. IAI's and Christensen's motion for partial summary judgment on Mannering's Cross-Claim is GRANTED as to all counts moved on except as to Mannering's misrepresentation claim and the request for punitive damages.

II.    <u>BACKGROUND FACTS.</u>

In 2000, HTBI, as general contractor, was awarded a contract to refurbish wharves at Pearl Harbor Naval Station. HTBI subcontracted a portion of the project to Mannering. Under the subcontract, Mannering was required to obtain general liability, workers' compensation, and USL&H insurance.

Mannering contacted Christensen, an insurance solicitor with IAI, to obtain the necessary insurance. For the previous seven years, Christensen had obtained insurance through Mannering for construction projects. Mannering Dep. 45-46; Christensen Dep. 272 (Vol. III).

On August 17, 2000, on Mannering's behalf, Christensen submitted an application for insurance to HEMIC. The application

said that the work was for "sewer construction," stated that work would be performed on "barges, vessels, docks, bridge over water," requested USL&H insurance, and listed the job code as 6306F.  HEMIC Ex. B.[1]  Pursuant to this application, HEMIC offered standard workers' compensation insurance, but declined to issue USL&H insurance.  HEMIC Ex. C.  Christensen requested that USL&H coverage be added to the policy.  HEMIC Ex. D.  Following receipt of further information, HEMIC amended the policy to include USL&H coverage.  On October 19, 2000, HEMIC cancelled the policy due to nonpayment by Mannering as a result of a delay in the construction project.

On December 11, 2000, Christensen submitted a second application to HEMIC requesting insurance for Mannering.  The application said that the work was for "sewer construction," stated that work would be performed on "barges, vessels, docks, bridge over water," requested USL&H insurance, and listed the job code as 6306F.  HEMIC Ex. G.  HEMIC submitted a quote for insurance that did not include USL&H coverage, stating that it needed more specific information on the work to be done and on why USL&H coverage was needed before it would issue such coverage.  HEMIC Ex. H.  Mannering never responded to this letter, and the quotation expired.

---

[1] The letter "F" denotes work on a federal project subject to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950.

4

On May 1, 2001, Christensen submitted a third application for insurance to HEMIC on behalf of Mannering.  As in the earlier applications, the box requesting USL&H coverage was checked.  HEMIC Ex. I.  However, unlike the earlier applications, the work described was "excavation," not sewer construction.  Id. Also unlike the earlier applications, the numerical class code for the job was listed as "6217," not 6306.  Id.  Moreover, the 6217 designation was not followed by the designation "F," while both prior applications had sought insurance for class code 6306F.  Id. Finally, on the third application, "no" was checked in response to a question regarding whether any work would be performed on "barges, vessels, docks, bridges over water," whereas the earlier applications had "yes" checked for this question.

Pursuant to this third application, HEMIC issued a quote for state workers' compensation insurance contingent on the receipt of further information, including the type of work that would justify code 6217.  HEMIC Ex. J.  On receiving the quote, Christensen requested that the employer's liability limits be increased, and HEMIC provided a revised quote to reflect the increased coverage.  HEMIC Ex. L.  HEMIC then issued a policy that reflected the change that Christensen had requested.  Id. This policy covered work for "Excavation & Drivers," listing the job code as 6217.  It specifically excluded injuries "subject to

the Longshore and Harbor Workers' Compensation Act."  Id.
Christensen subsequently issued a Certificate of Liability
Insurance to Mannering that stated that Mannering had the
insurance required by the subcontract between Mannering and HTBI.
HEMIC Ex. M.

On August 16, 2001, Maumau, a Mannering employee, was
killed when a trenching box fell onto him.  The decedent's wife
filed a claim for workers' compensation.  HEMIC denied the claim,
contending that the death occurred at a maritime location and
should be handled under the jurisdiction of the Longshore and
Harbor Workers' Compensation Act.  HTBI Ex. 73.  The decedent's
wife then filed a claim under the LHWCA.  An Administrative Law
Judge determined that Maumau had been involved in maritime work
and that his decedent was entitled to benefits under the LHWCA.
HTBI Ex. 76.[2]  As a result of Mannering's failure to obtain USL&H
insurance, HTBI was required to provide USL&H benefits to
Maumau's wife.  Id.  HTBI then filed this lawsuit.

III.    STANDARD OF REVIEW.

Rule 56(c) of the Federal Rules of Civil Procedure
provides that summary judgment shall be entered when

---

[2] The court was originally scheduled to hold a hearing on
these motions on December 8, 2003.  The court postponed the
hearing to allow the Benefit Review Board to rule on an appeal of
the ALJ's ruling, as a reversal of the ALJ ruling would have
affected many of the issues in the case.  Ultimately, the Benefit
Review Board affirmed the ALJ ruling.

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)). The movant must be able to show "the absence of a material and triable issue of fact," Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the nonmoving party will bear the burden of proof at trial. Celotex, 477 U.S. at 323.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. See T.W. Elec., 809 F.2d at 630. Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an

otherwise valid motion for summary judgment.  British Airways Bd.
v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978), cert. denied,
440  U.S. 981 (1979).  Moreover, if the factual context makes the
nonmoving party's claim implausible, that party must come forward
with more persuasive evidence than would otherwise be necessary
to show that there is a genuine issue for trial.  California
Arch'l Building Products, Inc. v. Franciscan Ceramics, Inc., 818
F.2d 1466, 1468 (9th Cir. 1987).

        The standard for a grant of summary judgment mirrors
the standard governing the grant of a directed verdict.  See
Eisenberg v. Insurance Co. of North America, 815 F.2d 1285, 1289
(9th Cir. 1987)(citing Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 250 (1986)).  Thus, the question is whether "reasonable
minds could differ as to the import of the evidence." Eisenberg,
815 F.2d at 1289.

        However, when "direct evidence" produced by the moving
party conflicts with "direct evidence" produced by the party
opposing summary judgment, "the judge must assume the truth of
the evidence set forth by the nonmoving party with respect to
that fact." T.W. Elec., 809 F.2d at 631.  Also, inferences from
the facts must be drawn in the light most favorable to the
nonmoving party.  Id.  These inferences may be drawn both from
underlying facts that are not in dispute, as well as from
disputed facts that the judge is required to resolve in favor of

the nonmoving party.  <u>Id.</u>

IV.      <u>ANALYSIS.</u>

> A.   HEMIC's Motion for Summary Judgment Against HTBI
> <u>is Granted.</u>

> 1.   <u>Neither IAI nor Christensen Was HEMIC's Agent.</u>

HTBI contends that Christensen and IAI acted improperly in issuing insurance without USL&H coverage.  HTBI contends that HEMIC is liable for IAI's and Christensen's misconduct because IAI and Christensen were HEMIC's agents.  Because the claims against HEMIC hinge largely on the question of whether IAI and Christensen were its agents, the court addresses this issue first.[3]

HTBI argues that the "Agent Agreement" between HEMIC and IAI demonstrates that IAI was HEMIC's agent.  HTBI Opp. at 14.  HTBI argues that Christensen, through IAI, had "the authority to provide <u>binding</u> workers' compensation and USL&H coverage through IAI's relationship with HEMIC."  <u>Id.</u> at 15 (emphasis added).  The court disagrees.

IAI did not have the power to bind HEMIC, and therefore

---

[3] Mannering also seeks a declaratory judgment that IAI and Christensen "were at all times, acting as HEMIC's agent in soliciting Mannering and in selling Mannering the wrong insurance."  Mannering Counter-MPSJ at 29.  Mannering's motion for summary judgment on this declaratory judgment request is made as an argument in the course of Mannering's opposition to HEMIC's motion for summary judgment against Mannering.  <u>Id.</u>  In light of the analysis to follow, Mannering's motion for partial summary judgment on this point is denied.

IAI did not act as HEMIC's agent.  Though HEMIC and IAI used the term "agent" in their agreement, the agreement, in reality, provided for IAI to serve as HEMIC's insurance broker.[4]  "The most definitive characteristic of an insurance agent is his authority to bind his principal, the insurer; an insurance broker has no such authority . . . . Put quite simply, insurance brokers, with no binding authority, are not agents of the insurance companies, but are rather independent contractors."  Marsh & McLennan of California, Inc. v. City of Los Angeles, 62 Cal. App. 3d. 108, 117-118 (1976).

The agreement between HEMIC and IAI explicitly states: "The Agent has no authority to bind workers' compensation and employers' liability coverage with the Company without the Company's prior written consent . . . . Binding coverage or issuing binder documents without written confirmation from the Company shall be cause for immediate termination of this Agreement."  HTBI Ex. 6, p. 3.  The agreement continues, "Except as specifically authorized in writing by the Company, the Agent

---

[4] The mere use of the term "agent" does not create an agency relationship when the terms of the relationship provide otherwise.  See e.g., In re Taxes, Aiea Dairy, Ltd., 46 Haw. 292, 302, 380 P.2d 156, 161 (1963) (in determining if an agency relationship exists, "courts will ignore apparently inconsistent language used, and look to the real nature of the agreement between the parties." (citations omitted); see also Maloney v. Rhode Island Ins. Co., 115 Cal App. 2d. 238, 245 (1953) (noting that the "actual relationship is determined by what the parties do and say, not by the name they are called").

has no authority to make, alter, vary, discharge or cancel any policy or any portion thereof . . . ." Id.

Furthermore, the course of dealings between HEMIC and IAI demonstrates that IAI did not have the power to bind HEMIC. On three occasions, IAI submitted applications on behalf of Mannering to HEMIC. Each time, HEMIC subsequently set conditions on the issuance of coverage and limitations on the type of coverage offered. IAI could not issue policies to Mannering without HEMIC's authority.

As an insurance broker without authority to bind HEMIC, Christensen was Mannering's agent, not HEMIC's. "An insurance broker is generally an agent of the insured and not of the insurer." Marsh, 62 Cal. App. 3d. at 802; see also 34 Am Jur. 2d Insurance § 113 (cum. supp. 1998) ("An insurance broker is primarily the agent of the first person who employs him, and ordinarily, where employed to procure insurance, he becomes the agent of the person for whom the insurance is procured.").[5]

There are circumstances in which a broker can become the agent of the insured, but such circumstances do not apply to the present case. An insurance intermediary may become the agent of the insurer after the issuance of the policy. See e.g.,

---

[5] Christensen had served as a broker for Mannering for approximately seven years. Mannering Depo. p. 45-46; Christensen Depo. p. 272. Christensen represented Mannering's interest long before he became involved with HEMIC.

Fidelity & Cas. Co. of New York v. Tillman Corp., 112 F.3d 302,
304 (7th Cir. 1997) (Under Indiana law, "An intermediary in the
insurance business is the agent of the insured while shopping for
a policy, and the agent of the insurer after a policy issues.");
Transamerica Interway Inc. v. Commercial Union Assur. Co. of
South Africa, 97 F.R.D. 419, 421 (S.D.N.Y. 1983) ("an insurance
broker may act for the insured in applying for and processing a
policy, the broker generally acts for the insurer in delivering
the policy and in collecting and remitting the premiums).[6]

 Christensen's alleged misdeeds occurred during
application for and processing of a policy, not in collecting or
remitting premiums.  Therefore, the standard rule that a broker
is the agent for the insured, not the insurer, applies here.  See
Marsh, 62 Cal. App. 3d. at 802.[7]  While the question of agency is

---

 [6] "Hawaii law is somewhat unclear as to the circumstances
under which an insurance broker can act as a 'double agent' for
both the insurer and insured."  Yu v. Albany Ins. Co., 281 F.3d
803, 811, n.12 (9th Cir. 2002).  However, the Hawaii Supreme
Court often looks to California law on insurance matters.  See
Allstate Ins. Co. v. Kim, 121 F. Supp. 2d 1301, 1306 (D. Haw.
2000).

 [7] The court's inclination, issued pursuant to its normal
practice, referred to Marsh & McLennan of California, Inc. v.
City of Los Angeles, 62 Cal. App. 3d. 108, 117-118 (1976), for
the general principle that an insurance broker without the
authority to bind an insurer is the agent of the insured.  At the
hearing, Mannering argued that Marsh did not apply here.
Mannering attacked the cases relied on by the Marsh court,
claimed that Marsh was a tax case inapplicable to the present
case, and argued that Marsh had never been cited by any court
outside of California.  Mannering is unpersuasive.  Marsh

generally left to the trier of fact, no factual issue exists
here.  HTBI has presented no evidence establishing a genuine
issue of fact on the question of whether Christensen and IAI were
HEMIC's agents.

        HTBI argues that even if Christensen and IAI were not
actual agents of HEMIC, they had apparent authority to act on
HEMIC's behalf.  HTBI Opp. at 15-16.  Apparent authority may
exist under the following circumstances:

> (1) *[T]he principal has manifested his consent* to the
> exercise of such authority or *has knowingly permitted*
> the agent to assume the exercise of such authority; (2)
> . . . *the third person* knew of [the principal's
> actions] . . . and, acting in good faith, had reason to

---

accurately states California law providing that a broker is
generally the agent of the insured.  See e.g., Carlton v. St.
Paul Mercury Ins. Co., 30 Cal. App. 4th 1450, 1457 (1994) ("a
broker in securing a policy for a client acts only as agent for
the insured") (citations omitted); accord Strangio v.
Consolidated Indem. & Ins. Co., 66 F.2d 330, 335 (9th Cir. 1933)
(construing California law) ("An insurance broker, like other
brokers, is primarily the agent of the person who first employs
him, and therefore, an insurance broker or agent employed to
procure insurance for another, ordinarily is not the agent of the
company, and owes no duty to it.").

Moreover, many other states have adopted a similar rule,
even if they have not specifically cited Marsh.  See, e.g.,
Evvtex Co., Inc. v. Hartley Cooper Assoc., Ltd., 102 F.3d 1327
(2d Cir. 1996) (under New York law, a broker is the insured's
agent when employed by the insured to procure insurance); Sudyam
v. Reed Stenhouse of Washington, Inc., 280 F.2d 1506, 1510 (9th
Cir. 1987) (same under Washington law); Countryside Oil Co. v.
Travelers Ins. Co., 928 F. Supp. 474, 483 (D.N.J. 1995) (general
rule under New Jersey law is that insurance broker acts for
insured); Selected Risks Ins. Co. v. Schwabenbauer, 540 F. Supp.
22, 24 (E.D. Pa. 1982) (same under Pennsylvania law); Nautilus
Ins. Co. v. First Nat'l. Ins. Inc., 254 Mont. 296, 299 (1992)
(same under Montana law).

believe, and *did actually believe,* that the agent
possessed such authority; and (3) . . . the third
person, *relying on such appearance of authority,* has
changed his position and will be injured or suffer loss
if the act done or transaction executed by the agent
does not bind the principal.

Cho Mark Oriental Food, Ltd v. K&K Intern., 73 Haw. 509, 517, 836
P.2d 1057, 1062 (1992) (italics in original).

HTBI argues that, by issuing its policy through IAI and
Christensen, HEMIC "established Christensen in the eyes of HTBI
and Mannering as the agent through whom HEMIC provided
insurance." HTBI Opp. at 16. HEMIC did nothing to indicate
that IAI and Christensen were its agents. In fact, HEMIC's
actions clearly showed the limitations on IAI's and Christensen's
authority. Christensen repeatedly applied for insurance on
behalf of Mannering to HEMIC. Neither IAI nor Christensen was
able to issue the policy directly. Each time an application was
submitted to HEMIC by IAI, HEMIC set conditions on the issuance
of a policy and restricted the type of policy it was willing to
issue. IAI did not have the ability to issue a policy binding
HEMIC. Given this course of events, one could not reasonably
find that HEMIC had authorized IAI or Christensen to bind it.

2.   HEMIC's Motion for Summary Judgment on HTBI's
     Misrepresentation Claims is Granted.

HTBI alleges that HEMIC was aware of the nature of the
work being conducted pursuant to the HTBI/Mannering subcontract,
agreed to provide the required insurance coverage, yet refused to

14

pay claims resulting from Maumau's death.  HTBI Compl. ¶¶ 36, 46.
In Counts I and II of the Complaint, HTBI contends that this
amounted to negligent and intentional misrepresentation.  Id.
HEMIC argues that it was not aware of the nature of the work
being conducted and did not know that USL&H coverage was needed.
HEMIC Mot. at 10.  HTBI contends that Christensen's knowledge of
Mannering's requirements can be imputed to HEMIC because IAI and
Christensen were HEMIC's agents.  HTBI Ex. 6; HTBI Opp. at 15.

     HTBI's misrepresentation claim against HEMIC fails
because any negligent misrepresentation by IAI cannot be imputed
to HEMIC.  As discussed in the previous section, IAI and
Christensen were not HEMIC's agents.  HEMIC never represented
that it was providing all coverage needed under the subcontract;
Christensen drafted and IAI issued the Certificate of Liability
Insurance.  HTBI Ex. M.  Furthermore, HEMIC's policy did not
state that HEMIC was providing USL&H coverage.[8]

     3.   HEMIC's Motion for Summary Judgment on HTBI's
          Breach of Contract Claim is Granted.

     In Count III of the Complaint, HTBI alleges that HEMIC
is liable for breach of contract because Christensen
misrepresented the extent of the coverage issued, and Mannering

---

[8] HTBI's claims for breach of express and implied warranties
(Counts IV and V) fail for similar reasons.  HEMIC never made any
warranties that the coverage it issued provided USL&H coverage,
nor did it warrant that all necessary coverage had been obtained.
Accordingly, summary judgment is granted on these counts as well.

and HTBI relied on HEMIC to issue the proper insurance coverage.
HTBI Opp. at 20.  There are numerous problems with this argument.

First as stated above, HEMIC is not liable for any
misrepresentation that may have been committed by Christensen or
IAI.  Second, the allegations simply do not make out a claim for
breach of contract.  The terms of the contract between HEMIC and
Mannering were clear.  USL&H coverage was excluded.  HEMIC Ex. K.
Failure to provide USL&H coverage does not give rise to a claim
for breach of contract, given the contract provision explicitly
excluding USL&H coverage.[9]

### 4.   HEMIC's Motion for Summary Judgment on HTBI's Claim for Indemnification is Granted.

HTBI, piecing together an assortment of misdeeds
allegedly committed by HEMIC, claims in Count VI that HEMIC must
indemnify HTBI for its losses.  First, HTBI argues that HEMIC's
own manual requires it to notify an insured if coverage is
insufficient.  HTBI Opp. at 21-22.  The manual, however, states
that HEMIC must place such a notice in its own file, not that it
must notify the insured.  HTBI Ex. 57, p. 7.  More critically,
HTBI has presented no evidence that HEMIC was aware that there
was any deficiency in coverage.  HTBI again relies on the

_____

[9] HTBI cites to Macabio v. TIG Ins. Co., 87 Haw. 307, 319,
955 P.2d 100, 112 (1998), in arguing that a breach of contract
claim can be maintained.  However, Macabio concerned a breach of
duty claim, not a breach of contract.

16

argument that Christensen was HEMIC's agent to impute knowledge to HEMIC. HTBI Opp. at 22. This argument has been previously addressed.

Second, HTBI contends that HEMIC had done an audit of the Mannering account and therefore should have known that USL&H coverage was needed. Id. The audit in question dealt with the policy issued on August 18, 2000. That policy was terminated for nonpayment on October 19, 2000. See HTBI Ex. 60. An audit of an earlier policy would not place HEMIC on notice of the type of work being done on a separate policy.

Finally, the only case law cited by HTBI to justify indemnification is wholly inapposite. In the cases cited, there were written indemnity agreements between the parties. HTBI has presented no evidence of an indemnity agreement. At the hearing, HTBI conceded that its claim for indemnity was based purely on equity, and that there was no indemnity agreement between the parties. HTBI could cite no authority requiring indemnity based on equity. Absent a specific indemnity agreement, HEMIC has no obligation to indemnify HTBI. See Hirasa v. Burtner, 68 Haw. 22, 24, 702 P.2d 772, 774 (1985).

### 5. HEMIC's Motion for Summary Judgment on HTBI's Promissory Estoppel Claim is Granted.

In Count VII, HTBI asserts a promissory estoppel claim based on HEMIC's alleged promise to satisfy Mannering's insurance

needs and Mannering's reliance on that promise to Mannering's and
HTBI's detriment.  HTBI Opp. at 24.  Once again HTBI relies on
the mistaken premise that Christensen was HEMIC's agent, and that
Christensen's obligations were HEMIC's obligations.  As
previously discussed, knowledge and obligations attributed to
Christensen cannot be imputed to HEMIC, because there was no
agency relationship.  Moreover, HEMIC never promised a policy
containing USL&H coverage; the policy issued specifically
excluded USL&H coverage.  HEMIC Ex. K.

      B.    HEMIC's Motion for Summary Judgment on Mannering's
          Cross-Claim is Granted.

      1.    HEMIC's Motion for Summary Judgment on Mannering's
          Conspiracy Cross-Claim is Granted.

In Count III of its Cross-Claim, Mannering alleges a
wide-ranging conspiracy between HEMIC, IAI, and Christensen to
defraud Mannering and to escape liability for issuing an
insurance policy without USL&H coverage.  Cross-Claim ¶¶ 43-49.
Mannering contends that, in the course of events relevant to this
lawsuit, "Mannering did everything right; Christensen, IAI and
HEMIC did everything wrong."  Mannering Opp. at 15.

HEMIC's primary defense to the charge of conspiracy is
that HEMIC analyzed Mannering's application for insurance and
chose to issue a policy that did not include USL&H coverage.
HEMIC Mot. at 13-15.  The policy issued clearly did not contain
the USL&H endorsement and expressly said that.  Id.  Mannering

offers two responses.

First, Mannering argues that HEMIC had "already written the same risk, on the same information, twice before, and offered USL&H," and therefore presumably had an obligation to offer the same coverage a third time. Id. at 15. The court disagrees.

The undisputed facts demonstrate that HEMIC was under no obligation to issue a policy with USL&H coverage, even if it had issued such a policy in the past. McEwan Depo; HEMIC Ex. 7 p. 46-47. Moreover, Mannering's contention that the third application was the same as the prior two is incorrect. The earlier applications described the work being done as sewer construction; the third listed excavations. HEMIC Exs. B, G, and I. Unlike the code in the earlier applications, the numerical class code on the third application was listed as 6217, not 6306. Id. Finally, the third application checked "no" in response to the inquiry into whether work would be performed on "barges, vessels, docks, bridges over water," whereas the earlier applications indicated such work would be done. Id.

Mannering attempts to demonstrate a conspiracy by claiming that HEMIC "issued a policy, never telling Mannering that it was not what he had applied for." Mannering Opp. at 16. The plain text of the issued policy states that USL&H coverage was not included. HEMIC Ex. K; McEwan Depo, HEMIC Ex. 7 at 39, 44. Nor did the way the application was filled out establish

19

that Mannering was doing maritime work requiring USL&H coverage.
McEwan Depo, HEMIC Ex. 7 at 69.  Mannering's assertion that HEMIC
had surreptitiously issued a policy contrary to the clear terms
of the application is not supported by any evidence.

Mannering next contends that its conspiracy claim is
based on conduct by HEMIC and Christensen after Maumau's death.
Mannering Opp. at 16.  Mannering alleges that HEMIC improperly
interrogated Dawn Mannering and improperly sent various form
letters designed to absolve itself of liability.  Id. at 16-19.

Mannering has produced no evidence showing that these
actions were part of a conspiracy.  The uncontroverted evidence
establishes that it is standard procedure for an insurance
company to deny a claim pending the outcome of an investigation.
Zane Depo, HEMIC Ex. 9, p. 50, 120.  HEMIC's continuing
investigation after the initial denial is not evidence of a
conspiracy.  Nor does HEMIC's attempt, as part of its litigation
strategy, to have Mannering acknowledge the absence of USL&H
coverage constitute a conspiracy.  Mannering was and is free to
put forth a different understanding of the policy, but one
litigant's attempt to get another party to agree to its
interpretation of a document does not, by itself, constitute a
conspiracy to defraud that party.

At the hearing, Mannering contended that the court
would be determining issues of fact if it ruled that HEMIC's

20

actions were done in the course of a standard investigation.  The
court's ruling, however, is only that Mannering does not present
any evidence to the contrary.  Mannering merely asserts that
HEMIC's conduct was improper and amounts to a nefarious
conspiracy.

Finally, Mannering claims that HEMIC acted fraudulently
because it issued a policy that **"insures absolutely nothing."**
Mannering Opp. at 6 (emphasis in original).  But a failure to
provide USL&H coverage does not make the policy meaningless.  The
policy provided state workers' compensation coverage for injuries
that did not fall under the LHWCA.  McEwan Depo., HEMIC Ex. 7, p.
206.  Even if all of Mannering's workers would have fallen under
the LHWCA and not state workers' compensation, HTBI has presented
no evidence that HEMIC knew or should have known this at the time
it issued the policy.[10]  There is therefore no evidence that
HEMIC committed any fraud when it issued the policy.  In
addition, Mannering, irrespective of coverage related to the
specific job in question, had to carry state workers'
compensation insurance to satisfy Haw. Rev. Stat. § 444-

---

[10] Before the ALJ and the Benefit Review Board, Mannering has
maintained that Maumau and other Mannering workers at the site
should not be deemed maritime employees and should be covered
under state workers' compensation laws, not the LHWCA.  Mannering
switches gears here in arguing that HEMIC engaged in a conspiracy
to provide worthless coverage, even though Mannering has
maintained that the policy HEMIC provided should be construed as
covering Mannering's workers.

21

11.1(a)(1).  The HEMIC policy provided such coverage for

applicable situations.  Mannering does not show that the policy

was worthless.

2.    HEMIC's Motion for Summary Judgment on Mannering's
      Failure to Defend Cross-Claim is Granted.

In Count XI of the Cross-Claim, Mannering contends that

HEMIC breached its obligation to defend Mannering against

Maumau's claim.  Mannering Cross-Claim ¶¶ 89-94.  However,

Mannering concedes that HEMIC did provide counsel.  Mannering

Opp. at 14; Exs 73 and 75, attached to Mannering Ex. Q, Zane

Depo.  Although HEMIC paid for Mannering's attorney, Mannering

argues that HEMIC breached its duty to defend because "HEMIC

participated in the ALJ proceeding as Mannering's adversary, for

the express purpose of trying to obtain a decision which would

deny Mannering coverage."  Mannering Counter-MPSJ at 14.  HEMIC's

"participation" involved HEMIC's preparation to appear during the

hearing, while ultimately not appearing except as an observer.

Mannering is stretching the nature of an insurer's duty

to defend.  An insurer must provide an insured a defense if the

relevant policy even potentially provides coverage to the

insured.  See Best Place, Inc. v. Penn America Ins. Co., 82 Haw.

120, 920 P.2d 334 (1996).  However, this does not mean that the

insurer is precluded from separately arguing that the policy does

not provide coverage.  In fact, insurers regularly file

declaratory judgment actions seeking rulings that there is no
coverage under insurance policies, while also providing defenses
for insureds.  See, e.g., Armed Forces Ins. Exchange v.
TransAmerica Ins. Co., 88 Haw. 373, 374, 966 P.2d 1099, 1000
(1998).  HEMIC did not participate in the actual administrative
hearing, and HEMIC's mere presence at the ALJ hearing, even
assuming it was significant, was no more adversarial than a
separate declaratory judgment action.  An insurer fulfills its
duty to defend by providing separate counsel to the insured, but
is not precluded from obtaining its own counsel and articulating
its own interpretation of the policy.

Finally, Mannering complains that HEMIC first provided
a defense two months after the initial demand and only after four
letters demanding coverage.  Mannering Counter-MPSJ at 14.
However, Mannering presents no evidence to show that this delay
interfered with or prejudiced his defense in any way.  In fact,
at the hearing, Mannering did not contest HEMIC's representation
that it paid Mannering's legal bills even for work done before
HEMIC agreed to tender a defense.  There is no evidence that
HEMIC's delay in accepting the tender of defense interfered with
the defense ultimately provided by HEMIC.

3.    HEMIC's Motion for Summary Judgment on Mannering's
      Cross-Claim of Estoppel is Granted.

In Count XIV of the Cross-Claim, Mannering contends

23

that HEMIC is estopped from denying coverage for Maumau's death
because HEMIC sent an invoice for additional premiums for
coverage at the accident site even after denying coverage for the
accident.  Mannering Opp. at 27-28.  Mannering contends that, if
accidents at that site were not covered by the policy, then HEMIC
should not have continued to demand premiums for coverage of the
job site.  Id.  In essence, Mannering is arguing that the policy
covered nothing, an argument more explicitly advanced by HTBI,
and that it was therefore improper to continue to collect
premiums.  As stated earlier in this order, the HEMIC policy
still provided certain coverage to Mannering and exposed HEMIC to
certain risks.  The policy provided coverage for any injuries
that might be considered subject to state workers' compensation
claims, including Maumau's claim should the ALJ's and Benefit
Review Board's ruling be reversed by the Ninth Circuit.
Continuing to demand premiums was not improper and does not estop
HEMIC from contesting coverage for Maumau's death.

4.    HEMIC is Granted Summary Judgment on Mannering's
Claims for Negligence, Misrepresentation, Breach
of Warranty, Breach of Contract, Waiver and
Estoppel, Breach of Fiduciary Duties, Deceptive
Practices, and Punitive Damages.

Mannering's Cross Claim alleges: that HEMIC was

negligent (Count VI); that HEMIC made misrepresentations (Count

VII); that HEMIC breached its warranty (Count VIII); that HEMIC

breached its contract (Count IX); that HEMIC waived its right to

deny liability (Count X); that HEMIC breached its fiduciary

duties (Count XII); that HEMIC engaged in deceptive practices

(Count XIII); and that HEMIC owes Mannering punitive damages

(Count XV).

The allegations underlying the above counts are

essentially the same.  Mannering claims that HEMIC had an

obligation to ensure that Mannering received the necessary

insurance, including USL&H coverage.  Mannering claims that HEMIC

breached this obligation by issuing a policy without USL&H

coverage, and that HEMIC misrepresented that the policy contained

the needed coverage.  Mannering Opp. at 21.  The reasons that

these allegations fail have been discussed in other parts of this

order and need not be repeated at length here.

First, HEMIC had no obligation to offer a policy with

USL&H coverage, even if Mannering had properly and unambiguously

applied for it.  Second, HEMIC did not represent that it had

offered a policy with USL&H coverage; the policy clearly stated

that such coverage was excluded.  HEMIC Ex. K.  Third, HEMIC did not issue the Certificate of Liability Insurance stating that Mannering was receiving all of the coverage needed.  Christensen drafted and IAI issued the Certificate.  As neither IAI or Christensen was HEMIC's agent, HEMIC is not liable for the issuance of the Certificate.  Mannering has presented no question of fact as to whether HEMIC violated any of its duties or committed any fraud or misrepresentation.

Mannering's Unfair and Deceptive Trade Practices claim is also precluded by Haw. Rev. Stat. § 480-2.  Section 480-2 states that only a consumer or certain government officials may bring a claim.  A consumer is defined as a "natural person who primarily for a personal, family or household purposes" purchases a good or service.  Haw. Rev. Stat. § 480-1.  Mannering claims that he purchased the insurance for his personal protection and therefore should be considered a "consumer."  Mannering Opp. at 26.  However,  Mannering Construction Co. purchased the insurance; it was not purchased by John Mannering as a natural person.  Moreover, the insurance sought to protect the business. John Mannering is only protected indirectly via his ownership interest in the business.  Mannering Construction Co. is not a consumer and cannot bring a Section 480-2claim.  See Paulson, Inc. v. Bromar, Inc., 775 F. Supp. 1329, 1338-39 (D. Haw. 1991).

Summary judgment is granted on all of the above counts.

C.    IAI's Motion for Summary Judgment On HTBI's Claims
is Granted in Part and Denied in Part.

1.    IAI's Motion for Summary Judgment on HTBI's
Negligent Misrepresentation Claim is Denied.

HTBI contends in Count I of the Complaint that IAI
negligently misrepresented that the insurance policy provided by
HEMIC provided all coverages needed for the Mannering/HTBI
subcontract.  A claim of negligent misrepresentation requires
that:

> (1) false information be supplied as a result of the
> failure to exercise reasonable care or competence in
> communicating the information; (2) the person for whose
> benefit the information is supplied suffered the loss;
> and (3) the recipient relies upon the
> misrepresentation.

Blair v. Ing, 95 Haw. 247, 269, 21 P.3d 452, 474 (Haw. 2001)
(citations omitted).

IAI first argues that HTBI has failed to satisfy the
requirements of Rule 9(b) of the Federal Rules of Civil
Procedure, which requires that the "circumstances constituting
fraud or mistake shall be stated with particularity."  IAI Opp.
at 13.  IAI contends that the pleading fails to state which
Certificate of Liability Insurance is at issue and which
subcontract provision was violated, so that it fails to provide
adequate notice of the claims, precluding IAI from asserting a
defense.  Id.  However, the Complaint clearly refers to the
November 21, 2000, HTBI/Mannering subcontract.  HTBI Comp. ¶ 9.

27

The Complaint directly quotes from the Certificate of Liability Insurance, dated June 1, 2001, which states that all needed insurance was provided. Id. ¶ 17; HEMIC Ex. M. It is clear from the Complaint that HTBI maintains that it was a misrepresentation for IAI to state that all needed insurance was being provided by HEMIC.[11] IAI and other Defendants have received notice that is sufficient to permit them to defend themselves against this claim.

IAI next contends that there is no evidence that false information was provided as a result of IAI's failure to exercise reasonable care. IAI Mot. at 8-9. IAI contends that Christensen was relying on a conversation with Dawn Mannering in concluding that USL&H coverage was not needed. Christensen Depo., IAI Ex. 41 p. 73-74. Dawn Mannering disputes this account. She contends that she stated that "All I know is that they would be digging, and if they are digging, they must be on the ground." D. Mannering Depo., HTBI Ex. 53 p. 75. She states that the first time that she had ever heard of USL&H coverage was after Maumau's accident. D. Mannering Depo., HTBI Ex. 51 p. 62 & 94.

---

[11] The Complaint also refers to a Certificate of Liability Insurance that IAI produced on May 8, 2001. Id. ¶ 15. It is not entirely clear whether the May 8 Certificate differs in any way from the June 1 Certificate. However, while HTBI perhaps could have been more precise in indicating that it was referring to the document dated June 1, 2001, the Complaint as a whole clearly articulates the fraud that HTBI alleges occurred.

28

It is undisputed that IAI previously understood that the Mannering subcontract required USL&H coverage. HTBI Ex. 24; Christensen Depo., IAI Ex. 50, p. 256. If one accepts Dawn Mannering's account of her conversation with Christensen, one could reasonably conclude that Christensen was not justified in assuming that USL&H coverage was unnecessary. One could further conclude that issuing a policy based on that conversation, without further investigation, was negligent. This alone precludes summary judgment.

Even if one accepts Christensen's account, one could still reasonably conclude that Christensen acted negligently. Christensen admits that Dawn Mannering was unsure as to the exact scope of the work to be done, the critical factor in determining whether Mannering needed USL&H coverage. Christensen Depo., HTBI Ex. 47 p. 97. Christensen admits that he did not do an independent investigation. Id. He concedes that he did not know if Dawn Mannering was knowledgeable about insurance. Id. Ex. 45, p. 113. He further concedes that he did not warn Dawn Mannering of the consequences of declining USL&H coverage. Id. Ex. 46, p. 144. Nor did he consult with John Mannering, with whom he had previously dealt in providing insurance. A reasonable person could conclude that Christensen acted negligently.

IAI's final contention is that any reliance on the Certificate issued by Christensen was unreasonable because a

29

cursory examination of the policy, either by Mannering or HTBI, would have revealed the error. IAI Reply at 7-9. IAI relies on a portion of Field v. Mans, 516 U.S. 59, 71 (1995), stating that, if a "cursory examination or investigation" would have revealed the error, then reliance was not reasonable. However, earlier in its opinion, the Field Court also quoted approvingly the statement in the Restatement (Second) of Torts (1976) § 540 that "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" Id. at 70.

Christensen admitted that the Certificate would have looked the same whether or not USL&H coverage had been included in the policy. Christensen Depo., HTBI Ex. 68 at 249. Therefore, a cursory investigation would not necessarily have uncovered the error. IAI contends that HTBI had realized that earlier policies lacked the necessary USL&H coverage, and therefore argues that HTBI's failure to uncover the deficiency in issue here makes HTBI's reliance unreasonable. IAI Reply at 7-8. In essence, IAI is arguing that HTBI caught IAI's mistakes in the past and therefore had an obligation to do so in the future. HTBI could have noticed the mistake in the policy when it was issued. Presumably, had HTBI noticed the deficiency, it could have demanded that Mannering obtain the proper coverage, as appears to have happened with the earlier policies. However, the

30

court cannot, as a matter of law, rule that HTBI's failure to do

so makes its reliance on the policy issued by IAI unreasonable.

A contrary ruling would always allow a broker to avoid

responsibility for errors, arguing that the insured should have

read the policy and noticed mistakes.

     2.   IAI's Motion for Summary Judgment on HTBI's
        <u>Intentional Misrepresentation Claim is Granted.</u>

In Count II of the Complaint, HTBI alleges that IAI

made intentional misrepresentations.  To demonstrate a claim for

intentional misrepresentation, a party must establish:

> (1) false representations were made by defendants, (2)
> with knowledge of their falsity (or without knowledge
> of their truth or falsity), (3) in contemplation of
> plaintiff's reliance upon these false representations,
> and (4) plaintiff did rely upon them.

<u>Shoppe v. Gucci America, Inc.</u>, 94 Haw. 368, 386, 14 P.3d 1049,

1067 (2000).  Fraud is never presumed and must be shown by clear

and convincing evidence.  <u>Id.</u>  IAI contends that it is entitled

to summary judgment on this claim because Christensen, believing

that USL&H coverage was not needed, did not know the Certificate

he issued was false at the time he issued it.  IAI Mot. at 12.

The court agrees.

HTBI has not met its burden of presenting a genuine

issue of fact as to whether IAI intentionally misrepresented

anything.  HTBI has presented no direct evidence showing that

Christensen or IAI had any intent to mislead HTBI.  HTBI asks

this court to simply infer that Christensen intended to

misrepresented the scope of coverage provided.[12]  Though the

moving party has the burden on summary judgment, a party seeking

to prove fraud must present some evidence to defeat a motion.

The absence of evidence is particularly glaring on this claim,

which Mannering would have to prove by clear and convincing

evidence.  Shoppe, 94 Haw. at 386, 14 P.3d at 1067.

> 3.   IAI's Motion for Summary Judgment on HTBI's Claim
>      for Breach of Contract is Denied.

In Count III of the Complaint, HTBI contends that IAI

breached its contract with Mannering to provide sufficient

insurance, and that, as a third-party beneficiary to the

contract, HTBI is entitled to damages for that breach.  IAI

contends that HTBI is not a third-party beneficiary to the

contract.  IAI Mot. at 19-20.  The court cannot say as a matter

of law that HTBI was not a third-party beneficiary of the

contract.

Whether someone is a third-party beneficiary of a

contract turns on whether the contracting parties intended to

benefit the third party.  Hunt v. First Ins. Co., 82 Haw. 363,

367, 922 P.2d 976, 980 (Haw. App. 1996).  IAI concedes that HTBI

---

[12] HTBI did not contest IAI's contention that it would
benefit by selling more insurance, and had nothing to gain by
intentionally selling less insurance than needed.  While a party
need not allege the motive behind a fraud per se, this factor
highlights HTBI's inability to produce evidence of intent.

was "possibly" an intended beneficiary of the contract between Mannering and HEMIC to provide insurance.  IAI Mot. at 19.  In fact, the Certificate of Liability Insurance specifically mentions HTBI as an "additional insured" to the policy.[13]  HEMIC Ex. M.[14]

However, IAI argues that HTBI was not an intended beneficiary of the contract between Mannering and IAI for the procurement of insurance.  IAI Reply at 11-12.  It is the contract to provide all necessary insurance that HTBI claims IAI breached.  IAI argues that, because HTBI did not know, and did not care how or from whom Mannering procured insurance, HTBI was not an intended beneficiary of the contract for procurement between IAI and Mannering.  Id.  That HTBI did not care whether Mannering procured insurance through IAI or through a different insurance broker does not mean that HTBI was not an intended beneficiary of the contract between Mannering and the ultimate insurance broker selected, IAI.  IAI was aware that Mannering

_____

[13] HTBI expected to be protected from liability if a worker was injured on the job.  Instead, HTBI has had to pay Maumau's damages, given Mannering's lack of proper insurance.  HTBI would clearly have benefitted had Mannering obtained sufficient insurance.

[14] IAI argues that HTBI is listed as an additional insured for the "general liability policy *only*."  IAI Mot. at 21 (italics added).  While the Certificate says HTBI is an additional insured for the General Liability provisions, it does not specify that HTBI is not an additional insured on the workers' compensation policy.

33

sought insurance as a subcontractor, as required by HTBI, the general contractor. See HTBI Ex. 49, Christensen Depo. IAI was aware that HTBI would be an intended beneficiary of any insurance policy ultimately procured. There is at least a question of fact as to whether HTBI would not also be an intended beneficiary of the contract to procure said insurance.

    4.    IAI's Motion for Summary Judgment on HTBI's
           Indemnification Claim is Granted.

In Count VI, HTBI seeks specific performance for indemnification from IAI for losses stemming from Mannering's failure to acquire USL&H insurance. HTBI Opp. at 27. IAI contends that, because there was no contract, no claim for indemnification can succeed. IAI Opp. at 20. HTBI counters that IAI breached its contract with Mannering to procure proper insurance, and that HTBI was an intended beneficiary of that contract. HTBI Opp. at 27. HTBI contends that it reasonably relied on IAI to provide Mannering with proper insurance, and that IAI must indemnify HTBI for its losses caused by the failure to provide such insurance. Id. at 28-29.

While the court has ruled that HTBI may have been an intended beneficiary of the contract between IAI and Mannering, and that HTBI may proceed on its breach of contract claim against IAI, HTBI is not entitled to indemnity from IAI based on the contract. For a party to be entitled to indemnity, the

obligation to indemnify must be based on the terms of the contract or some other independent duty between the parties. <u>See</u> <u>Hirasa</u>, 68 Haw. at 24, 702 P.2d at 774. The contract between IAI and Mannering was not written. The court cannot read into the oral contract for procurement a requirement that IAI indemnify HTBI for any losses incurred as a result of the failure to provide proper insurance. There is no evidence of any agreement on such a contract provision.

HTBI complains that it is inequitable for it to bear the burden of mistakes it contends were made by IAI and Mannering. HTBI Opp. at 28. However, absent a specific indemnity agreement, indemnity is not the means by which HTBI may seek to recoup its losses. Recovery must be based on other claims.

> 5.   IAI's Motion for Summary Judgment on HTBI's Claim
>      <u>for Punitive Damages is Denied.</u>

Relying on <u>Masaki v. General Motors Corp.</u>, 71 Haw. 1, 16-17, 780 P.2d 566, 575 (1989), IAI argues that punitive damages are not recoverable unless HTBI can show IAI intended to cause injury. IAI Mot. at 18. Under <u>Masaki</u>, "want of care that would raise the presumption of a conscious indifference to consequences" is required for punitive damages; intent is not required. <u>Id.</u> Punitive damages may be awarded for gross negligence. See <u>Ditto v. McCurdy</u>, 98 Haw. 123, 131, 44 P.3d 274,

282 (2002) (including gross negligence as one factor in

determining the amount of punitive damages).  The court cannot

say as a matter of law that a claim for gross negligence cannot

be maintained.

        D.    IAI's Motion For Partial Summary Judgment on Some
            of Mannering's Claims is Granted in Part and
            Denied in Part.[15]

        1.    IAI's Motion for Summary Judgment on Mannering's
            Claim for Intentional Misrepresentation is
            Granted.

In Counts II and V of its Cross-Claim, Mannering

alleges that IAI made intentional misrepresentations.  IAI

contends that Mannering did not plead this claim with the

particularity required by Fed. R. Civ. P. 9(b).  IAI Opp. at 12.

This contention is without merit.  Mannering alleges that the

misrepresentation occurred when IAI, through Christensen, issued

the June 1, 2001, Certificate of Liability Insurance stating that

all necessary insurance had been procured.  Mannering Cross-Comp.

¶ 38.  IAI had more than adequate notice of the substance of the

claim.

IAI then argues that it had no knowledge of the falsity

---

[15] At the hearing, Mannering argued that summary judgment was
inappropriate because IAI did not specifically address the counts
alleged by Mannering, instead merely asserting that IAI was
entitled to summary judgment.  The court is unpersuaded.  IAI
currently moves for summary judgment on six of the counts alleged
by Mannering.  IAI specifically addressed each of these counts in
its motion, and Mannering has had ample opportunity to respond.
See IAI's Mot. for Partial Summary Judgment.

and no intent to misrepresent Mannering.[16]  IAI offered virtually

identical defenses to the same claims brought by HTBI.  As

articulated earlier, no evidence has been presented to show that

IAI intentionally misrepresented the type of coverage provided.

Intentional misrepresentation would ultimately have to be proved

by clear and convincing evidence.  Shoppe, 94 Haw. at 386, 14

P.3d at 1067.  Mannering's failure to present any evidence of

intent requires summary judgment in IAI's and Christensen's favor

on that claim.

2.    IAI's Motion for Summary Judgment on Mannering's
      Claim of Conspiracy to Defraud is Granted.

In Count III of its Cross-Claim, Mannering alleges that

IAI conspired with HEMIC to defraud Mannering by concocting a

scheme to disclaim liability for Maumau's death.  Mannering

relies on the allegations contained in its Opposition to HEMIC's

motion for summary judgment.  Mannering Opp. to IAI at 20.

A conspiracy is a "combination of two or more persons

[or entities] by concerted action to accomplish some purpose not

in itself criminal or unlawful by criminal or unlawful means."

Roberts Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co., 91

Haw. 224, 253, 982 P.2d 853, 882 (1999).  Mannering's allegations

_____

[16]  IAI does not address Mannering's contention that IAI was
negligent in issuing the faulty policy and presumably does not
seek summary judgment on this count.  Even if IAI's motion were
read to include that count, there clearly is a question of fact
as to whether IAI was negligent in issuing a policy without USL&H
coverage.

were detailed at length in the earlier part of this order dealing
with HEMIC's motion for summary judgment.  As stated in that
section, Mannering has presented no evidence that HEMIC did
anything improper in conducting an investigation.  Mannering also
cannot maintain a claim that Christensen conspired with IAI, as
Christensen was acting as IAI's agent, a point Mannering
concedes.  Mannering Cross-Comp. ¶ 5.  An agent of a corporation
is incapable of conspiring with the corporate principal.  Elliot
v. Tilton, 89 F.3d 260 (5th Cir. 1996); Weinbaum v. Garfield,
Whitman, and Cohen, 46 Cal. App. 4th 1310, 1316 (1996).  As
Mannering presents no evidence that HEMIC engaged in
conspiratorial conduct, and Christensen and IAI are incapable of
conspiring with each other, summary judgment is granted to IAI
and Christensen on this claim.

> 3.   IAI's Motion for Summary Judgment on Mannering's
>      Claim of Unfair or Deceptive Trade Practices is
>      Granted.

In Count XIII of the Cross-Claim, Mannering alleges
that IAI and Christensen engaged in unfair and deceptive trade
practices.  As stated earlier in the order, only a consumer can
bring an unfair trade practice claim under Haw. Rev. Stat. § 480-
2.  Mannering is not a consumer and therefore cannot bring this
claim.

    4.   IAI's Motion for Summary Judgment on Mannering's
Promissory Estoppel Cross-Claim is Granted.

Mannering now concedes that it does not seek relief
against Christiansen or IAI for promissory estoppel, which it had
originally claimed in Count XIV. Mannering Opp. at 21. That
count is therefore dismissed.

    5.   IAI's Motion for Summary Judgment on Mannering's
Cross-Claim for Punitive Damages is Denied.

In Count XV of the Cross-Claim, Mannering seeks
punitive damages. As previously discussed, punitive damages may
be awarded for gross negligence. See Ditto, 98 Haw. at 131, 44
P.3d at 282. The court cannot say as a matter of law that a
claim for gross negligence cannot be maintained.

V.    CONCLUSION.

HEMIC's motion for summary judgment against HTBI is
GRANTED on all counts. HEMIC's motion for summary judgment on
Mannering's cross-claims is GRANTED on all counts. Mannering's
motion for partial summary judgment against HEMIC is DENIED on
all counts. IAI's motion for summary judgment against HTBI is
GRANTED as to HTBI's claim for indemnity (Count VI) and
intentional misrepresentation (Count II), but DENIED as to claims
for negligent misrepresentation (Count I), breach of contract
(Count III), and punitive damages. IAI and Christensen's motion
for partial summary judgment on Mannering's Cross-Claim is
GRANTED as to claims for Intentional Misrepresentation (Counts II

39

and V), conspiracy to defraud (Count III), Unfair Trade Practices (Count XIII), and promissory estoppel (Count XIV), but DENIED as to negligent misrepresentation (Counts II and V) and punitive damages (Count XV).[17]  As IAI did not move for summary judgment on the portions of Mannering's Cross-Claim alleging negligence (Count I) and breach of fiduciary duty (Counts IV and XII), these issues remain for further adjudication.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 8, 2004.

_____
SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

---

[17] Count II alleges negligent and intentional misrepresentation.  Count V does not specify what type of misrepresentation is alleged.  Summary judgment is granted on Counts II and V to the extent intentional misrepresentation is alleged, but denied to the extent negligent misrepresentation is alleged.

Healy Tibbets Builders, Inc. v. Mannering Construction, Co., et al., Civ. No. 02-000146 SOM/BMK; ORDER GRANTING HEMIC'S MOTION FOR SUMMARY JUDGMENT AGAINST HTBI'S CLAIMS AND MANNERING'S CROSS-CLAIMS; DENYING MANNERING'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST HTBI; GRANTING IN PART AND DENYING IN PART IAI'S MOTION FOR SUMMARY JUDGMENT ON HTBI'S CLAIMS; GRANTING IN PART AND DENYING IN PART IAI'S AND CHRISTENSEN'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON MANNERING'S CROSS-CLAIMS.