IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HEALY TIBBITTS BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MANNERING CONSTRUCTION COMPANY; INSURANCE ASSOCIATES, INC.; HAWAII EMPLOYERS MUTUAL INSURANCE COMPANY, INC., and SCOTT CHRISTENSEN <br><br> Defendants. | CIVIL NO. CV02-00146 SOM BMK <br><br> MEMORANDUM IN SUPPORT OF MOTION |

## MEMORANDUM IN SUPPORT OF MOTION

### I.   INTRODUCTION

This case arises out of a dispute over insurance coverage with respect to a contract awarded on or about June 9, 2000 to Plaintiff, HEALY TIBBITTS BUILDERS, INC. ("Healy Tibbitts") for construction on Submarine Base, Hawaii at Pearl Harbor, and a certain subcontract between Healy Tibbitts and Defendant JOHN M. MANNERING, d.b.a. Mannering Construction Company ("Mannering") executed on or about November 21, 2000 for excavation work on the project (sometimes referred to as the "P-123 Project"). For the P-123 Project, Mannering contacted IAI for certain insurance and IAI procured certain insurance for Mannering from Hawaii Employers Mutual Insurance Company, Inc. ("HEMIC").

257827.2

On August 16, 2001 a Mannering worker, Finefeuiaki Maumau ("Maumau") was killed while working on the job site. Maumau's widow and children filed a claim for death benefits with HEMIC, but HEMIC denied coverage claiming the accident was not covered by State workers' compensation, but rather by federal Longshore and Harbor Workers' Compensation ("LHWC") coverage. This lawsuit followed raising claims for declaratory relief, negligent/intentional/fraudulent misrepresentation, breach of contract, breach of express/implied warranty, specific performance/ indemnification, promissory estoppel and other claims all as set forth more fully in the Complaint, cross-claims, counterclaims and by motion and discovery in the action. HEMIC was subsequently granted summary judgment on or about March 9, 2004 as to all claims against HEMIC. Healy Tibbitts and IAI settled all of their claims in late 2004 and subsequently IAI and Mannering separately settled their remaining claims (the Healy Tibbitts/IAI settlement is the subject of a companion motion for determination of good faith settlement expected to be filed concurrently with this motion). There are no remaining claims in this action given HEMIC was dismissed by motion.[1]

This petition covers the settlement between IAI and Mannering, as set forth in the attached SETTLEMENT, INDEMNITY AND RELEASE AGREEMENT.

---

[1] To the extent that any cross claims of HEMIC remain pending, dismissal of those claims is sought in this motion.

2

257827.2

See Exhibit "A", proposed Agreement.[2]  The Parties submit that under all of the facts and surrounding circumstances, this settlement constitutes a good faith settlement within the meaning of Hawaii Revised Statutes ("HRS") Chapter 663-15.5, as amended.

## II.   BACKGROUND FACTS

On June 9, 2000, Healy Tibbitts, as the general contractor, entered into a contract for work on Submarine Base, Hawaii at Pearl Harbor (the "P-123 Project").  On or about November 21, 2000 Healy Tibbitts subcontracted certain excavation work to Mannering on the P-123 Project.  Mannering contacted IAI for certain insurance.  Initially in the fall of 2000 Mannering requested, and IAI procured from HEMIC, both State and Federal workers' compensation policies.  However, because of the delay in Mannering beginning any work, the first policy issued by HEMIC was cancelled, and a second application for such insurance from HEMIC was not pursued.  Subsequently, in or around May, 2001 Mannering again contacted IAI and requested that insurance for the P-123 Project be procured.  There is a dispute as to the facts with respect to the instructions given by Mannering to IAI, but the end result was that IAI believed it had been instructed to obtain only State workers compensation from HEMIC for Mannering and IAI did

---

[2] By the terms and conditions of the settlement, it is to be kept confidential to the extent possible, and by order entered July 6, 2006, the court granted the Parties permission to file the settlement agreement under seal.

3

procure such insurance. Mannering contends that he instructed IAI to obtain the same kinds of insurance for the P-123 Project as requested in the first two applications in the fall of 2000.

Subsequently, on August 16, 2001 a worker, Maumau, was killed while working for Mannering on the P-123 Project. His widow and children made claim to HEMIC for workers' compensation benefits and HEMIC denied the claim on the basis that it issued only State coverage and the accident involving Maumau was covered by Federal LHWC coverage. This lawsuit followed.[3]

### III. LEGAL STANDARD

#### A. Haw. Rev. Stat. §663-15.5

In 2002, Haw. Rev. Stat. §663-15.5 (Act 300) was promulgated into law. The statute, which was amended in 2003, governs the effect of a partial settlement on non-settling joint tortfeasors or co-obligors in the context of multi-party litigation. As currently worded, Haw. Rev. Stat. §663-15.5 states in relevant part:

> (a) A release, dismissal with or without prejudice, or a covenant not to sue or not to enforce a judgment that is given in good faith under subsection (b) to one or more joint tortfeasors, or to one or more co-obligors who are mutually subject to contribution rights, shall:
>
> . . . .
>
> (3) Discharge the party to whom it is given from all liability

---
[3] At the same time an administrative proceeding was initiated to determine whether or not LHWC or State coverage applied. By a decision of the Administrative Law Judge on November 1, 2002, in OALJ Case No. 2002-LHC-938, OWCP No. 15-45582, it was decided that LHWC applied. A subsequent appeal to the Benefit Review Board affirmed that decision and a subsequent appeal to the Ninth Circuit Court of Appeals, No. 04-70575, affirmed the Labor Appeals Board decision on April 14, 2006. These proceedings are sometimes referred to as the underlying administrative hearings.

4

257827.2

>   for any contribution to any other party.
>
>   . . . .
>
>   (d)   A determination by the court that a settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

See Haw. Rev. Stat. §663-15.5.

### B.   Case Law Regarding the Determination of Good Faith

On September 25, 2003, the Hawaii Supreme Court issued its decision interpreting Hawaii's good faith settlement law in *Troyer v. Adams*, 102 Haw. 399, 77 P.3d 83 (2003). In *Troyer*, the Supreme Court conducted a detailed review of the following three standards: (1) the "proportionate liability" standard, (2) the "non-collusive" or "non-tortious conduct" standard, and (3) the "totality of the circumstances" standard. Based on criticism that the proportionate liability standard placed a severe burden on courts to conduct evidentiary hearings and discouraged settlements in general, the Hawaii Supreme Court adopted the totality of the circumstances approach for determining whether a settlement is in good faith. This approach is grounded in the underlying notion that HRS §663-15.5 is intended to encourage settlements and the good faith provision is meant to "merely provide the court with an opportunity to prevent collusive settlements aimed at injuring the interests of a non-settling joint tortfeasor." Id. at 110, 77 P.3d at 426. Further, the *Troyer* Court stated that the trial court may consider the following

factors in reviewing the settlement:

(1) the type of case and difficulty of proof at trial, e.g., rear-end motor vehicle collision, medical malpractice, product liability, etc.;

(2) the realistic approximation of total damages that the plaintiff seeks;

(3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial;

(4) the predicted expense of litigation;

(5) the relative degree of fault of the settling tortfeasors;

(6) the amount of consideration paid to settle the claims;

(7) the insurance policy limits and solvency of the joint tortfeasors;

(8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and

(9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose.

## IV. DISCUSSION

### A. The Proposed Settlement Between IAI and Mannering Was Made in Good Faith Pursuant to Haw. Rev. Stat. §663-15.5 and the *Troyer* Factors

The settlement between Mannering and IAI meets all of the requirements for a determination of a good faith settlement.

(1) The case is very complex in itself and further complicated by the underlying administrative proceedings and appeals;

(2) Damages on just the LHWC claims were most recently calculated by Healy Tibbitts' expert at a present value of $970,000[4] which opinion is undisputed;

---

[4] Exhibit "B" hereto, *Plaintiff's First Amended Response to Defendant Mannering Construction Company's Second Request for Answers to Interrogatories Propounded on February 18, 2005*, answer to Interrogatory No. 1.

6

(3) Healy Tibbitts had a strong contractual claim against Mannering, and sought damages claimed to be in excess of $1,360,000[5], which could have been passed on to IAI, and Mannering's claims against IAI were on top of the amounts Healy Tibbitts sought to recover from Mannering and IAI;

(4) The litigation has already been very expensive and all parties expected further appeals and possible retrials.  Moreover, Mannering's damages include the attorney's fees incurred in this litigation, meaning that Mannering's damage claims would continue to increase simply by pursuing the determination of those claims by a trial;

(5) While the settling parties deny any fault or wrong doing, the Parties had raised serious allegations against each other which would require trial for resolution;

(6) IAI has agreed to resolve Mannering's claims for his fees and costs separately, and to assume the liability for the LHWC payments; the settlement consideration is substantial;

(7) The consideration is covered by insurance;

(8) The settlement was the product of multiple sessions at mediation and settlement conferences with the court;

(9) One potential tortfeasor who may be effected is HEMIC, which has already been dismissed as to all claims against it in this action.  A successful

---

[5] *Id.*

appeal will be necessary for any claims to be pursued against HEMIC.

In light of the fact that IAI has assumed the existing liability and responsibility to pay for the LHWC payments to the Claimants, and to separately resolve Mannering's claim for damages, including attorneys' fees, there is little question but that IAI has agreed to pay much of the damages sought by Mannering. That resolves all claims between IAI and Mannering. Through IAI's rights under IAI's separate settlement with Healy Tibbitts, the claims between Mannering and Healy Tibbitts are also being resolved. The only claims which are not resolved are the claims against HEMIC, all of which have been dismissed by the court.

This settlement is in spite of the fact that there is a good faith dispute as to the instructions given by Mannering to IAI and other defenses raised in the answers and cross-claims that may have been decided in favor of IAI, Mannering or the Healy Tibbitts at trial. In short, the case presents a truly contested set of facts and it was settled with that dispute and disagreement as to the facts in mind.

Finally, there is no evidence or indication of fraud, collusion or tortious conduct relating to the proposed settlement. There is also no evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasors or motivated by any other wrongful purpose. All negotiations between Mannering and IAI were conducted at arms length and primarily through mediator, Keith Hunter, and United States Magistrate Judge Barry M. Kurren. See Declaration of

Paul A. Schraff. The relationship among the parties is not conducive to collusion or wrongful conduct.

### B. The Court's Determination of Good Faith Should Bar Any Other Claims for Equitable Comparative Contribution or Partial or Comparative Indemnity Against the Parties

Assuming that the Court determines the settlement between Mannering and IAI is made in good faith, any remaining cross-claims or future claims against the Parties, including all claims of HEMIC, should be dismissed to the extent that they seek equitable comparative contribution or partial or comparative indemnity. Haw. Rev. Stat. §663-15.5(d).

### V. CONCLUSION

Based upon the above facts, argument and authority, the Parties respectfully requests that this Court grant this petition and enter an order finding that the settlement between Mannering and IAI is made in good faith. The Parties further request that the court dismiss all of HEMIC's claims with prejudice in accordance with the good faith settlement determination and Haw. Rev. Stat. §663-15.5(d).

DATED: Honolulu, Hawaii, July 10, 2006.

_____
PAUL A. SCHRAFF
Attorney for Defendant JOHN M.
MANNERING dba MANNERING
CONSTRUCTION COMPANY

257827.2