IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HEALY TIBBITTS BUILDERS, INC., | ) ) ) | Civil No. 02-00146 SOM/BMK |
| Plaintiff, | ) ) ) ) | MEMORANDUM IN SUPPORT OF MOTION |
| vs. | ) ) | |
| MANNERING CONSTRUCTION COMPANY; INSURANCE ASSOCIATES, INC.; HAWAII EMPLOYERS MUTUAL INSURANCE COMPANY, INC., | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM IN SUPPORT OF MOTION

I.  INTRODUCTION

This case arises out of a dispute over insurance coverage with respect to a contract awarded on or about June 9, 2000 to Healy Tibbitts for construction on Submarine Base, Hawaii at Pearl Harbor and a certain subcontract between Healy Tibbitts and Mannering Construction Company ("Mannering") executed on or about November 21, 2000 for excavation work on the project (sometimes referred to as the "P-123 Project"). For the P-123 Project Mannering contacted IAI for certain insurance and IAI procured certain insurance for Mannering from

Hawaii Employers Mutual Insurance Company, Inc. ("HEMIC"). On August 16, 2001 a Mannering worker, Finefeuiaki Maumau ("Maumau") was killed while working on the job site. Maumau's widow and heirs filed a claim for death benefits with HEMIC, but HEMIC denied coverage claiming the accident was not covered by State workers' compensation, but rather by federal Longshore and Harbor Workers' Compensation ("LHWC") coverage. This lawsuit followed raising claims for a declaratory action, negligent/intentional/fraudulent misrepresentation, breach of contract, breach of express/implied warranty, specific performance/ indemnification, promissory estoppel and other claims all as set forth more fully in the Complaint, cross-claims, counterclaims and by motion and discovery in the action. HEMIC was subsequently granted summary judgment on or about March 9, 2004 as to all claims against HEMIC. Plaintiff and IAI settled all of their claims in late 2004 and subsequently IAI and Mannering separately settled their remaining claims (the latter settlement is the subject of a companion motion for determination of good faith settlement filed jointly with this motion). There are no remaining claims in this action given HEMIC was dismissed by motion.

This petition covers the settlement between Plaintiffs and IAI, as described in the attached Release, Indemnification and Settlement Agreement. See

Exhibit "A", proposed Agreement.[1] The Parties submit that under all of the facts and surrounding circumstances, this settlement constitutes a good faith settlement within the meaning of Hawaii Revised Statutes ("HRS") Chapter 663-15.5, as amended.

## II.     BACKGROUND FACTS

On June 9, 2000, Plaintiff, as the general contractor, entered into a contract for work on Submarine Base, Hawaii at Pearl Harbor (the "P-123 Project"). On or about November 21, 2000 Plaintiff subcontracted certain excavation work to Mannering on the P-123 Project. Mannering contacted IAI for certain insurance. Initially in the fall of 2000 Mannering requested, and IAI procured from HEMIC, both State and Federal workers' compensation policies. However, because of the delay in Mannering beginning any work, the first two applications for such insurance from HEMIC were cancelled. Subsequently, in or around May, 2001 Mannering again contacted IAI and requested that insurance for the P-123 Project be procured. There is a dispute as to the facts with respect to the instructions given by Mannering to IAI, but the end result was that IAI believed it had been instructed to obtain only State workers compensation from HEMIC for

---

[1] By the terms and conditions of the settlement it is to be kept confidential to the extent possible and the Parties requested that Exhibit "A", the proposed settlement agreement, be protected by the court from any unnecessary publication, and the court has agreed that such shall be filed under seal.

Mannering and IAI did procure such insurance. Mannering contends that it instructed IAI to obtain the same kinds of insurance for the P-123 Project as requested in the first two applications in the fall of 2000.

Subsequently, on August 16, 2001 a work, Maumau, was killed while working for Mannering on the P-123 Project. His widow and heirs made claim to HEMIC for workers' compensation benefits and HEMIC denied the claim on the basis that it issued only State coverage and the accident involving Maumau was covered by Federal LHWC coverage. This lawsuit followed.[2]

## III. LEGAL STANDARD

### A. Haw. Rev. Stat. §663-15.5

In 2002, Haw. Rev. Stat. §663-15.5 (Act 300) was promulgated into law. The statute, which was amended in 2003, governs the effect of a partial settlement on non-settling joint tortfeasors or co-obligors in the context of multi-party litigation. As currently worded, Haw. Rev. Stat. §663-15.5 states in relevant part:

---

[2] At the same time an administrative proceeding was initiated to determine whether or not LHWC or State coverage applied. By a decision of the Administrative Law Judge on November 1, 2002, in OALJ Case No. 2002-LHC-938, OWCP No. 15-45582, it was decided that LHWC applied. A subsequent appeal to the Benefit Review Board affirmed that decision and a subsequent appeal to the Ninth Circuit Court of Appeals, No. 04-70575, affirmed the Labor Appeals Board decision on April 14, 2006. These proceedings are sometimes referred to as the underlying administrative hearings.

> (a)    A release, dismissal with or without prejudice, or a covenant not to sue or not to enforce a judgment that is given in good faith under subsection (b) to one or more joint tortfeasors, or to one or more co-obligors who are mutually subject to contribution rights, shall:
>
>   . . . .
>
> (3)    Discharge the party to whom it is given from all liability for any contribution to any other party.
>
>   . . . .
>
> (d)    A determination by the court that a settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

See Haw. Rev. Stat. §663-15.5.

B.    Case Law Regarding the Determination of Good Faith

On September 25, 2003, the Hawaii Supreme Court issued its decision interpreting Hawaii's good faith settlement law in Troyer v. Adams, 102 Haw. 399, 77 P.3d 83 (2003). In Troyer, the Supreme Court conducted a detailed review of the following three standards: (1) the "proportionate liability" standard, (2) the "non-collusive" or "non-tortious conduct" standard, and (3) the "totality of the circumstances" standard. Based on criticism that the proportionate liability standard placed a severe burden on courts to conduct evidentiary hearings and discouraged settlements in general, the Hawaii Supreme Court adopted the totality

of the circumstances approach for determining whether a settlement is in good faith. This approach is grounded in the underlying notion that HRS §663-15.5 is intended to encourage settlements and the good faith provision is meant to "merely provide the court with an opportunity to prevent collusive settlements aimed at injuring the interests of a non-settling joint tortfeasor." Id. at 110, 77 P.3d at 426. Further, the Troyer Court stated that the trial court may consider the following factors in reviewing the settlement:

(1) the type of case and difficulty of proof at trial, e.g., rear-end motor vehicle collision, medical malpractice, product liability, etc.;
(2) the realistic approximation of total damages that the plaintiff seeks;
(3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial;
(4) the predicted expense of litigation;
(5) the relative degree of fault of the settling tortfeasors;
(6) the amount of consideration paid to settle the claims;
(7) the insurance policy limits and solvency of the joint tortfeasors;
(8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and
(9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose.

IV. DISCUSSION

A. The Proposed Settlement Between Plaintiffs and IAI Was Made in Good Faith Pursuant to Haw. Rev. Stat. §663-15.5 and the Troyer Factors

The settlement between Plaintiff and IAI meets all of the

requirements for a determination of a good faith settlement.

    (1) The case is very complex in itself and further complicated by the underlying administrative proceedings and appeals;

    (2) Damages on just the LHWC payments were calculated by Plaintiff's expert at a present value of at least $587,911, see Exhibit "B";

    (3) Plaintiff had a strong contractual claim against Mannering which could have been passed on to IAI;

    (4) The litigation had already been very expensive and all parties expected further appeals and possible retrials;

    (5) While the settling parties deny any fault or wrong doing, the Parties had raised serious allegations against each other which would require trial for resolution;

    (6) IAI has agreed to pay Plaintiff some of its fees and costs and to assume the liability for the LHWC payments, the settlement consideration is substantial;

    (7) The consideration is covered by insurance;

    (8) The settlement was the product of multiple sessions at mediation and settlement conferences with the court;

    (9) Given this settlement resolves all of the claims between the Parties raised in this litigation, it should have little or no effect on any remaining tortfeasors.

In light of the facts that IAI has assumed the existing liability and responsibility to pay for the LHWC payments to the Claimants, and to make a compromised

payment to the Plaintiff for some of its other expenses including attorneys' fees, there is little question but that IAI has agreed to cover the most significant claims in this matter. Given that it also steps into the shoes of the Plaintiff, pursuant to the settlement agreement, it also is in a position to dismiss or settle all of the remaining claims with Mannering.[3] Consequently, IAI, the Plaintiff (and now Mannering) have all agreed to settle and resolve any and all claims that may have been brought or which could have been brought in this matter as between them.

This is in spite of the fact that there was a good faith dispute as to the instructions given by Mannering to IAI and other defenses raised in the answers and cross-claims that may have been decided in favor of IAI, Mannering or the Plaintiff at trial. In short, the case present a truly contested set of facts and it was settled with that dispute and disagreement as to the facts in mind.

Finally, there is no evidence or indication of fraud, collusion or tortious conduct relating to the proposed settlement. There is also no evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasors or motivated by any other wrongful purpose. All negotiations between Plaintiff and IAI were conducted at arms length and primarily through mediator, Keith Hunter,

---

[3] In fact, as noted above, Mannering and IAI have reached a separate settlement that is the subject of a companion motion for determination of good faith filed jointly with this motion.

and the United States Magistrate Judge Barry M. Kurren.  <u>See</u> Declaration of James H. Hershey.  The relationship among the parties is not conducive to collusion or wrongful conduct.

  B. **The Court's Determination of Good Faith Should Bar Any Other Claims for Equitable Comparative Contribution or Partial or <u>Comparative Indemnity Against the Parties</u>**

  Assuming that the Court determines the settlement between Plaintiff and IAI was made in good faith, any cross-claims or future claims against the Parties should be dismissed to the extent that they seek equitable comparative contribution or partial or comparative indemnity.  Haw. Rev. Stat. §663-15.5(d).

## V. CONCLUSION

  Based upon the above facts, argument and authority, the Parties respectfully requests that this Court grant this petition for approval of the settlement between Plaintiff and IAI, and enter an order finding that the settlement between Plaintiff and IAI was made in good faith.

Dated: Honolulu, Hawaii, _____JUL 10 2006_____.

             JAMES H. HERSHEY
             Attorney for Defendants
             INSURANCE ASSOCIATES, INC. and
             SCOTT CHRISTENSEN